IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |
|---|---|
| VANITA TAYLOR, et al. | : |
| | : |
| v. | :   Civil Action No. DKC 15-0442 |
| | : |
| SANTANDER CONSUMER USA, INC. | : |
| | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this putative class action is a motion to stay the proceedings and compel arbitration filed by Defendant Santander Consumer USA, Inc. ("Santander" or "Defendant").  (ECF No. 12).  The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion to compel arbitration will be granted.

**I.   Background**

   **A.   Factual Background**

Proposed Named Plaintiffs Vanita Taylor and Pamela Gray ("Plaintiffs") purchased automobiles from car dealers in Maryland in 2005 and 2007, respectively.  (ECF No. 2, at 1).  To purchase the vehicle and finance the purchase, Ms. Taylor executed a State of Maryland Vehicle Sales Contract ("Sales Contract") (ECF No. 14-1) and a Retail Installment Sale Contract ("RISC") (ECF No. 14-2).  Similarly, Ms. Gray entered into a Maryland Buyer's Order ("Buyer's Order") (ECF No. 14-3) and an

RISC (ECF No. 14-4).  Ms. Taylor's Sales Contract and Ms. Gray's

Buyer's Order both contain an arbitration clause.  Ms. Taylor's

states, in part:

> Purchaser(s) (also referred to as "you") and
> Dealer agree that if any Dispute [as defined
> on reverse] will be resolved by binding
> arbitration.  .  .  .  An award by the
> arbitrator shall be final and binding on all
> parties to the proceeding.  .  .  .  You agree
> that class-wide arbitration of a Dispute may
> not be undertaken and that no claim arising
> from a Dispute (known or unknown) may be
> adjudicated in or be the basis for
> compensation as a result of any class action
> proceeding.  .  .  .  THE PARTIES UNDERSTAND
> THAT THEY ARE WAIVING THEIR RIGHT TO JURY
> TRIAL AND CLASS CONSIDERATION OF ALL
> DISPUTES BETWEEN THEM NOT SPECIFICALLY
> EXEMPTED FROM ARBITRATION IN THIS
> ARBITRATION AGREEMENT.

(ECF No. 14-1, at 2).  This provision on the front of the

contract references additional arbitration language on the

reverse side that reads, in relevant part:

> Additional Arbitration Terms: A Dispute is
> any question as to whether something must be
> arbitrated, as well as any allegation
> concerning a violation of a state or federal
> statute that may be the subject of binding
> arbitration, any monetary claim, whether
> contract, tort, or other, arising from the
> negotiation of and terms of the Vehicle
> Sales Contract, any service contract or
> insurance product, or any retail installment
> sale contract or lease (but this arbitration
> agreement does not apply to and shall not be
> binding on any assignee thereof); provided,
> however, that Your failure to provide
> consideration to be paid by You . . . as
> well as Dealer's right to retake possession
> of the vehicle pursuant to this Vehicle

> Sales Contract or any document executed in connection therewith shall not be considered a Dispute and shall not be subject to arbitration.

(*Id.* at 3). The arbitration clause in Ms. Gray's Buyer's Order reads: "YOU ACKNOWLEDGE THAT THIS BUYER'S ORDER CONTAINS AN AGREEMENT TO ARBITRATE DISPUTES, THAT YOU HAVE READ THE ARBITRATION PROVISION APPEARING ON THE REVERSE SIDE OF THIS BUYER'S ORDER AND THAT YOU AGREE TO ITS TERMS." (ECF No. 14-3, at 2). The referenced provision on the reverse side reads, in part:

> ARBITRATION TERMS – The parties agree that all disputes, claims or controversies arising from or relating to the Purchaser's purchase of the Vehicle, the Agreement or the relationship which result[s] from the Agreement, or the validity of this arbitration clause or the Agreement shall be resolved by binding arbitration. . . . The parties agree and understand that they choose arbitration instead of litigation to resolve their disputes . . . except that the Dealer (or the Assignee of any Retail Installment Sales Contract) may proceed with Court action in the event the Purchaser fails to pay any sums due under the Agreement. . . . A dispute is any question as to whether something must be arbitrated, as well as any allegation concerning a violation of state or federal statute that may be the subject of binding arbitration, any purely monetary claim greater than $1,000.00 in the aggregate whether contract, tort, or other, arising from the negotiation of and terms of the Buyer's Order, any service contract or Insurance product, or any retail installment sale contract or lease (but this arbitration provision does

3

> not apply to and shall not be binding on any
> assignee thereof).

(*Id. at 3*).  Neither RISC contains an arbitration clause.

Both dealers assigned Plaintiffs' loans to third-party financial companies, and Defendant Santander eventually obtained Plaintiffs' loans in 2010 or 2011.[1]  (ECF Nos. 2, at 1-2; 13, at 2-3).  Plaintiffs made multiple monthly payments, but they ultimately defaulted on their loans, and Defendant repossessed both vehicles.  (ECF No. 13, at 2-3).  Plaintiffs' complaint alleges that, in repossessing Plaintiffs' vehicles, Defendant violated the Maryland Commercial Law Code.  (ECF Nos. 2, at 3-5; 15, at 1-2).

**B.  Procedural History**

Plaintiffs commenced this action by filing a putative class action complaint in Circuit Court for Prince George's County on December 29, 2014.  (ECF No. 2).  Defendant removed the case to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(d), as amended by the Class Action Fairness Act. (ECF No. 1).  On March 13, 2015, Defendant filed the pending motion to compel arbitration and stay the proceeding.  (ECF No.

---

[1] As Judge Messitte noted recently, "Santander's business is to acquire security interest in cars such as the one purchased by Plaintiffs.  Santander enforces its security interests by initiating and ordering repossession of the cars owned by buyers who default on their loans, and, in appropriate cases, by filing lawsuits in Maryland seeking deficiency judgments." *Swan v. Santander Consumer USA*, No. PJM-14-1906, 2015 WL 1242767, at *1 (D.Md. Mar. 17, 2015).

4

12).  Plaintiffs filed an opposition (ECF No. 15) and Defendant replied (ECF No. 18).  The undersigned then directed the parties to supplement their briefing in light of the recent Court of Appeals of Maryland decision, *Ford v. Antwerpen Motorcars Ltd., et al.*, 443 Md. 470 (2015).

## II. Standard of Review

The Federal Arbitration Act ("FAA") governs this dispute, as it involves interstate commerce.  *See Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697-98 (4th Cir. 2012); *Barbagallo v. Niagara Credit Solutions, Inc.*, No. DKC-12-1885, 2012 WL 6478956, at *1 (D.Md. Dec. 4, 2012).  Under the FAA, a written arbitration clause is valid, enforceable, and irrevocable, "except upon grounds that exist at law or in equity for the revocation of a contract."  9 U.S.C. § 2.  The FAA favors the enforcement of arbitration agreements.  *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).  The United States Court of Appeals for the Fourth Circuit recently noted that:

> We will compel arbitration under [the FAA] if: (i) the parties have entered into a valid agreement to arbitrate, and (ii) the dispute in question falls within the scope of the arbitration agreement.  *Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 179 (4th Cir. 2013) (citation omitted).  "The issue whether a dispute is arbitrable presents primarily a question of contract interpretation, requiring that we give effect to the parties' intentions as expressed in their agreement."  *Id.*  If we conclude that the parties intended to

> arbitrate a dispute, we must enforce that
> agreement according to its terms.
> *CompuCredit Corp. v. Greendwood*, 132 S.Ct.
> 665, 669 (2012). At the same time, it is
> well-settled that a "party cannot be
> required to submit to arbitration any
> dispute which he has not agreed to submit."
> *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260,
> 266 (4th Cir. 2011) (quotation omitted).

*Chorley Enters., Inc. v. Dickey's Barbecue Restaurants, Inc.*,
2015 WL 4637967, at *6 (4th Cir. Aug. 5, 2015).

In deciding a motion to compel arbitration, district courts
must "engage in a limited review to ensure that the dispute is
arbitrable — i.e., that a valid agreement to arbitrate exists
between the parties and that the specific dispute falls within
the substantive scope of that agreement." *Hooters of Am., Inc.
v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999) (citations and
internal quotation marks omitted). In so doing, courts apply
"ordinary state-law principles that govern the formation of
contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S.
938, 944 (1995). Under Maryland law, a court, when interpreting
an arbitration clause, is to "examine only the language of the
arbitration agreement itself." *Hill v. Peoplesoft USA, Inc.*,
412 F.3d 540, 543 (4th Cir. 2005) (citing *Cheek v. United
Healthcare of Mid-Atlantic, Inc.*, 378 Md. 139, 152-53 (2003));
*see also Mould v. NJG Food Serv. Inc.*, 986 F.Supp.2d 674, 679
(D.Md. 2013).

## III. Analysis

### A.   Construing the Sales Contract/Buyer's Order and the RISC Together

Plaintiffs devote a significant portion of their opposition to the argument that the arbitration agreements are not enforceable under Maryland law.   (ECF No. 15, at 11-16). Plaintiffs contend in their opposition that, under the Code of Maryland Regulations ("COMAR") 11.12.01.15A, a contract for the sale of a vehicle must be, as a matter of law, a single document or a "single instrument."   In this case, Plaintiffs argue, that single document is the RISC, which does not include an arbitration agreement.   (ECF No. 15, at 11-16).   Defendants counter that "where several instruments are executed as part of a single transaction they are read together to determine the intentions of the parties."   (ECF No. 18, at 2).   Defendants assert that there is no "single instrument" requirement in vehicle sales contracts and that the Sales Contract/Buyer's Order, and their arbitration clauses, should be construed together with the RISC as representing the complete agreement between the parties.   (*Id.*).   The Court of Appeals and the Fourth Circuit have expressly agreed with Defendant that "COMAR 11.12.01.15A does not . . . displace [Maryland's] common law contract principles permitting multiple documents from being construed together as evincing the entire agreement of the

parties." *Ford*, 443 Md. at 473; *see also Rota-McLarty*, 700 F.3d at 700.

### 1. *Ford* and *Rota-McLarty*

It is clear that, after *Ford*, a court can, in the abstract, construe multiple documents together in the vehicle sales context. The question remains if the facts of the current case warrant such a construction. The petitioners in *Ford* purchased a vehicle and, after discovering alleged defects, filed a complaint in state court against Antwerpen. *Ford*, 443 Md. at 475. Much like in the current case, the petitioners' Buyer's Order contained an arbitration clause, but the RISC did not. Antwerpen sought to compel arbitration, and the petitioners argued that the RISC superseded the Buyer's Order, leaving no enforceable arbitration clause. *Id.* The Court of Appeals held that the Buyer's Order and the RISC could be construed together. *Id.* at 478. The court first reasoned that COMAR 11.12.01.15A does not create a "single document rule" requiring vehicle sales contracts to be contained within one document. *Id.* at 479-82. The court noted that the Buyer's Order stated that "the front and back of this buyer's order *along with other documents* signed by You in connection with this order, comprise the entire agreement between the parties." *Id.* at 482 (emphasis in original) (citation and internal quotation marks omitted). Additionally, the arbitration clause "refer[ed] directly to the

RISC" and the RISC itself referenced the existence of other documents. *Id.* at 482-83. After examining the language of both documents, the court held that the "RISC and the Buyer's Order in the present case indicate an intention that they are to be read together as constituting one transaction." *Id.* at 483.

Similarly, in *Rota-McLarty*, the appellee filed a putative class action complaint against Santander alleging violations of Maryland consumer protection laws resulting from Santander's collection of outstanding debt after it repossessed and sold appellee's car at a loss. *Rota-McLarty*, 700 F.3d at 695. The Fourth Circuit, after determining that the FAA applied, held that the Buyer's Order and RISC "were made as part of a single transaction, and should be interpreted together under Maryland law." *Id.* at 700. Even though the RISC had an integration clause, the Fourth Circuit noted that, because the Buyer's Order was "expressly conditioned upon approval of [the] retail installment sale contract, and defines the 'Agreement' collectively with other documents made in connection with the Buyer's Order," the RISC "is insufficient on its own to explain the full extent of the parties' obligations." *Id.* (citations and internal quotation marks omitted).

### 2.   Applying *Ford* and *Rota-McLarty*

Defendant argues that *Ford* and *Rota-McLarty* are directly applicable to the current case and require that the Vehicle

Sales Contract/Buyer's Order and the RISC be construed together. (ECF No. 21, at 7-12). Plaintiffs counter that the facts in the current case are sufficiently different from the circumstances in *Ford*, and the Court of Appeals' limited holding should not apply. (ECF No. 20, at 1-2). Plaintiffs argue that the key distinction is that the RISC in *Ford* stated that "[t]his contract along with all other documents signed by you in connection with the purchase of this vehicle, comprise the entire agreement." *Ford*, 443 Md. at 475. Conversely, in the current case, the RISC states that "This contract contains the entire agreement between you and us relating to this contract." (ECF Nos. 14-2, at 2; 14-4, at 2). Defendant argues that the RISC language was only part of the Court of Appeals' reasoning for its holding in *Ford*. In all other ways, Defendant contends, the writings in the current case are identical to those at issue in *Ford*. (ECF No. 21, at 4). The arbitration clauses all reference a "retail installment sale contract." (ECF Nos. 14-1, at 3; 14-3, at 3). Additionally, both Ms. Taylor's Sales Contract and Ms. Gray's Buyer's Order contain language, just like in *Ford*, that notes that the agreement between the parties includes "other documents signed" by the parties, including the RISC. (ECF Nos. 14-3, at 2; 18-1, at 3).

Much like in *Rota-McLarty*, the facts in this case show that the Sales Contract/Buyer's Order and the RISC "were made as part

of a single transaction, and should be interpreted together under Maryland law." *Rota-McLarty*, 700 F.3d at 700.  Plaintiffs correctly note that the RISC in *Ford* contained stronger language indicating that the documents should be read together, but nothing in *Ford* undermines the Fourth Circuit's reasoning in *Rota-McLarty*.  In fact, *Ford* supports and strengthens the Fourth Circuit's reasoning.  Plaintiffs' attempts to distinguish *Ford* are unavailing because the language in the Sales Contract/Buyer's Order in the current case is nearly identical to the language in *Rota-McLarty*, and, under ordinary contract interpretation principles, leads to the conclusion that the documents should be construed together.  The Sales Contract and Buyer's Order contain explicit language that the final or complete agreement includes other documents signed in relation to the sale of the vehicle.  The arbitration clauses unambiguously state that they apply to additional agreements, including "any retail installment sale contract."  "The RISC's integration clause [does not prevent] reading both contracts together as a single agreement," *id.* at 700, and the arbitration agreement is thus enforceable over the current dispute.

**B.  Applying the Arbitration Agreement to Santander**

Plaintiffs also argue that the arbitration clauses do not apply to Defendant because both clauses state that "this arbitration provision does not apply to and shall not be binding

11

on any assignee thereof."   (ECF Nos. 14-1, at 3; 14-3, at 3).
For example, Ms. Gray's Buyer's Order states, in relevant part:

> A dispute is any question as to whether
> something must be arbitrated, as well as any
> allegation concerning a violation of state
> or federal statute that may be the subject
> of binding arbitration, any purely monetary
> claim greater than $1,000.00 in the
> aggregate whether contract, tort, or other,
> arising from the negotiation of and terms of
> the Buyer's Order, any service contract or
> Insurance product, or any retail installment
> sale contract or lease (*but this arbitration
> provision does not apply to and shall not be
> binding on any assignee thereof*).

(ECF No. 14-3, at 3) (emphasis added).   Plaintiffs contend that
the arbitration clauses do not cover Defendant because it is the
assignee of the RISCs.   Defendant counters that the Fourth
Circuit, in *Rota-McLarty*, rejected the exact same argument.
(ECF No. 18, at 12-13).   The language in Ms. Gray's Buyer's
Order appears to be identical to the language at issue in *Rota-
McLarty*.   The language in Ms. Taylor's Vehicle Sales Contract is
only marginally different, and the construction of the sentence
is the same.   The Fourth Circuit, in *Rota-McLarty* held that the
corresponding language in that case did not mean that Santander
was not covered by the arbitration clause:

> Here, the parenthetical phrase that
> constitutes the carve-out follows, and
> modifies, a list of three types of monetary
> claims that are subject to arbitration.   The
> parenthetical exempts the forced arbitration
> of any "purely monetary claim greater than
> $1,000" by an assignee of that claim.   It

does not pertain to assignees of the RISC in
particular; rather, it indicates that a
person to whom an otherwise-qualifying
monetary claim has been assigned cannot
enforce arbitration. *Santander is not the
assignee of any monetary claim, but instead
is the assignee of the entire agreement
embodied in the RISC*. . . . We thus find
nothing in the language of the arbitration
provision to indicate it was not intended to
be enforceable by Santander as assignee of
the RISC.

*Rota-McLarty*, 700 F.3d at 701 (emphasis added).   The Fourth
Circuit's reasoning in *Rota-McLarty* is directly analogous to the
current case; accordingly, here, the arbitration clauses apply
to Defendant as an assignee of the RISC.

##    C.   Consideration for the Arbitration Clause

Plaintiffs further contend that the arbitration clauses are
unenforceable because they lack "mutuality of consideration."
(ECF No. 15, at 9-11).   Specifically, the clauses allow the
Dealer to avoid arbitration and go to court to collect payments
due under the contract.   (ECF Nos. 14-1, at 3; 14-3, at 3).
Plaintiffs argue that this means "the consumer has to arbitrate
every claim she may have, but the dealer and the lender have to
arbitrate nothing."   (ECF No. 15, at 9).   Defendant counters
that this limited exception does not show a lack of
consideration because the clauses are not "completely unilateral
or otherwise illusory."   (ECF No. 18, at 14).

An arbitration agreement, to be valid, must be supported by "consideration independent of the contract underlying it, namely mutual obligation." *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 609 (4th Cir. 2013) (citing *Cheek*, 378 Md. at 152-53). "[T]o be binding and enforceable, a contract must be supported by consideration. A 'promise becomes consideration for another promise only when it constitutes a binding obligation.' Unlike a binding obligation, an 'illusory promise' appears to be a promise, but it does not actually bind or obligate the promisor to anything.'" *Hill*, 412 F.3d at 543 (quoting *Cheek*, 378 Md. at 147-49). The Court of Appeals, in *Cheek*, held that there was not sufficient consideration supporting an arbitration agreement because one party was able to "alter, amend, modify, or revoke the [arbitration policy] at its sole and absolute discretion at any time with or without notice." *Cheek*, 378 Md. at 144. Similarly, the Fourth Circuit has held that there was not sufficient consideration when one party was bound to arbitration but the other party was not bound to any arbitration at all. *Noohi*, 708 F.3d at 610; *see also Caire v. Conifer Value Based Care, LLC*, 982 F.Supp.2d 582, 592-93 (D.Md. 2013) (finding no mutual obligation because the arbitration clause explicitly only obligated one party to arbitrate).

Here, the arbitration clauses allow Santander to bring some claims in court, but "[m]utuality . . . does not require an

exactly even exchange of identical rights and obligations between the two contracting parties." *Walther v. Sovereign Bank*, 386 Md. 412, 433 (2005). The Court of Appeals has found that "exceptions to the arbitration agreement, which allow [the defendant] to litigate certain specific claims instead of having to submit them to arbitration" did not invalidate the arbitration clause. *Id.; see also Hill*, 412 F.3d at 544 (finding that an arbitration clause binding both parties "save a few, specifically enumerated exceptions" was valid). The arbitration clauses in the current case are more similar to those at issue in *Walther* and *Hill* than *Cheeks* and *Noohi* because the agreement imposes mutual obligations on Plaintiffs and Defendant. Both Plaintiffs and Defendant unambiguously gave up a right to bring suits in court for at least some disputes. Defendant's obligation to arbitrate, although it contains an exception, is not illusory, as Defendant is bound to arbitration for any dispute other than one to collect money owed for the vehicles.[2]

---

[2] Plaintiffs briefly allege that the promise is illusory because making payments is the "only obligation" Plaintiffs undertook, but this is not true. The contracts contain other obligations, such as obligations to obtain insurance, to keep the vehicle in the United States or Canada, and to not sell the vehicle for at least six months. (ECF Nos. 14-2, at 3; 14-3, at 3; 14-4, at 3).

D.   **Dismissal of Suit**

Although Defendants have moved to stay the proceedings, "district courts in the Fourth Circuit have recognized that dismissal, rather than a stay of trial pending arbitration, is appropriate where[, as here,] a court rules that all of a plaintiff's claims must be arbitrated." *In re Titanium Dioxide Antitrust Litigation*, 962 F.Supp.2d 840, 856 (D.Md. 2013) (citations omitted).  The Fourth Circuit has "acknowledged that 'dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable.'" *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 376 (4th Cir. 2012) (quoting *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001)).[3]  Similarly, the Fifth Circuit has noted that "[t]he weight of authority clearly supports dismissal of the case when *all* the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (emphasis in original) (citations omitted).  Much like in *Titanium Dioxide*, "no useful purpose

---

[3] There appears to be disagreement within the Fourth Circuit as to if dismissal is appropriate. *Aggarao*, 675 F.3d at 376 n.18 (discussing how there is tension within the Fourth Circuit (as well as among the circuits) regarding whether dismissal or a stay is appropriate when granting a motion to compel arbitration); *see also Noohi*, 708 F.3d at 605 n.2 (noting the disagreement and declining to resolve it).  Nonetheless, district courts within the Fourth Circuit have continued to find dismissal appropriate. *See Titanium Dioxide*, 962 F.Supp.2d at 856.

will be served by staying the pertinent proceedings pending arbitration." *Titanium Dioxide*, 962 F.Supp.2d at 856.

**IV.   Conclusion**

For the foregoing reasons, the motion to compel arbitration filed by Defendant will be granted, and the case will be dismissed.  A separate order will follow.

_____/s/_____

DEBORAH K. CHASANOW
United States District Judge

17